#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSE APOLINAR MIRANDA-ORNELAS,<br><br>Defendant. | 8:23CR49<br><br>FINDINGS AND RECOMMENDATION |

This matter is before the Court on the Motion to Suppress Evidence and Statements and Request for Hearing (Filing No. 20) filed by Defendant, Jose Apolinar Miranda-Ornelas. Defendant filed a brief (Filing No. 21) in support of the motion and a copy of the challenged Affidavit and Application for Issuance of a Search Warrant (Ex. 101 at Filing No. 22). The government filed a brief (Filing No. 30) in opposition.

Because Defendant only challenges whether the affidavit contained sufficient probable cause to issue the search warrant for his residence, no evidentiary hearing is required, as that determination is made by reviewing the four corners of the warrant affidavit and application. See *United States v. Saddler*, 19 F.4th 1035, 1039 (8th Cir. 2021) ("[O]nly that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.") (quoting *United States v. Roberts*, 975 F.3d 709, 713 (8th Cir. 2020)). The Court held a status conference with counsel regarding the motion on May 10, 2023, and the matter is now fully submitted.[1] For the following reasons, the undersigned magistrate judge recommends that the motion be denied.

#### BACKGROUND

On December 8, 2022, a Nebraska county court judge signed a search warrant for a residence at 3630 R Street in Omaha, Nebraska, based upon an application and affidavit submitted by Omaha Police Department Detective Chris Rock ("Detective Rock"). (Filing No. 22-1). The affidavit sets forth the following information:

---

[1] During the telephone conference, the government stated it was not requesting a hearing regarding the good faith exception pursuant to *United States v. Leon*, 468 U.S. 897, 920 (1984).

Throughout the last several months of 2022 the Omaha Police Department Narcotics Unit, along with the Drug Enforcement Administration Omaha Field Division (refered [sic] to here after as DEA) have been conducting an investigation into a Mexico Source of Supply for large quantities of methamphetamine within the Omaha Metro Area by the name Ricardo Guzman-Corona.

On July 21, 2022[,] Affiant Officer and Officer James Haley were contacted by a confidential informant (referred to hereafter as CI) who stated that they had been in contact with Ricardo Guzman-Corona who is based in Mexico that would be willing to sell the CI 2 pounds of methamphetamine. The CI contacted Ricardo via phone call to place the order for 2 pounds of methamphetamine. Ricardo then contacted a courier based in Omaha, Nebraska (already known to Affiant Officer) in order to deliver the methamphetamine. Affiant Officer along with DEA, and Metro Area Drug Task Force then stopped the courier in route [sic] to the predetermined sale location. Officers located approximately 2 pounds of methamphetamine inside the courier[']s vehicle. Affiant Officer along with the DEA, and Metro Area Drug Task Force then continued the investigation and were able to seize over 50 pounds of methamphetamine.

On August 25, 2022[,] Affiant Officer and Officer Haley utilizing the same CI ordered 1 pound of methamphetamine from Ricardo in Mexico. Ricardo then dispatched another courier later positively identified by the CI as Jose Miranda-Ornelas (Driver[']s License Photo, Referred [sic] to hereafter as Jose) to a predetermined buy location. Jose arrived on location in his Brown, 2008, Cadillac CTS, Nebraska license plate YBE996, registered to Jose Miranda-Ornelas at 3630 R Street, Omaha, Nebraska. The CI exited his/her vehicle and entered into the front passenger seat of Jose's vehicle. A short time later the CI exited Jose's vehicle and entered back into his/her vehicle, and met with Affiant Officer and Officer Haley back at the predetermined meet location where he/she handed Affiant Officer approximately 1 pound of methamphetamine (Field Tested Positive). During the debrief of the CI he/she was able to positively identify the courier as Jose from a Nebraska Driver[']s License photo with all identifying information covered. Surveillance Officers then continued surveillance on Jose, where he was followed back to his residence at 3630 R Street. Jose parked in the back of the residence where he exited and it is believed walked inside.

Affiant Officer and Special Agent Colin Strickland received information from another drug investigation being conducted from other units within the DEA that Jose was also in contact with their Source of Supply in Mexico and was able to provide a phone number believed to belong to Jose. Special Agent Colin Strickland requested subscriber information on that number which came back that it belonged to Jose Miranda-Ornelas at 3630 R Street. Affiant Officer then authored a warrant for tracking of a mobile device (Phone Ping), which was approved by a District Court Judge. While ut[i]lizing the phone ping Affiant Officer was able to observe that Jose works for "Padilla Car Wash". "Padilla Car Wash" was also

2

involved in an investigation within the DEA where large quantities of cocaine, and methamphetamine were being distributed by the owner.

In November and December 2022 Affiant Officer was contacted by Officer Krause, and Special Agent Hailey Anderson who had an investigation into another Source of Supply out of Mexico who they believed was utilizing Jose in order to transport and deliver pound quantities of methamphetamine within the Omaha Metro Area. In their investigation it was determined that their source of supply was directing customers to meet locations near the area of 3630 R Street due to their target[']s courier not wanting to travel far with pound quantities of methamphetamine. Their target was also giving instructions to customers that a gold colored Cadillac would be conducting narcotics transactions. Jose Miranda-Ornelas has a brown Cadillac registered to him and conducted a controlled delivery of approximately one pound of methamphetamine to a CI previously as stated above (it should be noted that Jose's Cadillac appears to be a goldish brown color even though in the DMV records it is recorded as brown).

In Affiant[']s training and experience, along with other arrests related to this investigation Affiant is hoping to locate drug records that identify other couriers, and customers within the Omaha Metro Area. Amounts of narcotics being distributed along with pricing for the those different amuonts [sic] being sold. Affiant also knows that these couriers are in contact with Mexico via cellular telephones and that in siezing [sic] these Affiant will be able to locate past messages, and possibly new numbers related to the Mexico sources of supply and local customer, photos of narcotics, or other possibly narcotics and money stash houses with in this group. Affiant believes he will locate potential bank account information, or wire transfers related to these drug trafficking organizations.

Affiant Officer has reason to believe, and does believe, that if Officers of the Metro Area Drug Task Force, and the Drug Enforcement Administration Omaha Field Division are granted a court authorized search warrant for the address of 3630 R Street, Omaha, Douglas County, Nebraska., Officers will obtain evidence of an illegal narcotics distribution network, and for the offense of possession of a controlled substance, which is a violation of the state statutes of the State of Nebraska.

(Filing No. 22-1).

Based upon the above information, the county court judge issued a search warrant for the residence at 3630 R Street. Following execution of the search warrant, law enforcement obtained incriminating evidence and Defendant made incriminating statements. (Filing No. 21 at p. 2).

On February 22, 2023, the grand jury returned a one-count indictment against Defendant charging him with conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1), 846. (Filing No. 1). Defendant has filed the instant motion to suppress all evidence and

3

statements obtained as a result of the execution of the search warrant, asserting the warrant application and affidavit did not contain sufficient information to establish probable cause to believe a crime or evidence of a crime would be found at the Defendant's residence. Defendant further contends the warrant affidavit was so lacking in indicia of probable cause that it was not objectively reasonable for officers to rely on the warrant in good faith. (Filing No. 21).

## ANALYSIS

Defendant contends the search warrant application and affidavit lacked probable cause to support the search of his residence because the affidavit only "included some generalized statements about law enforcement beliefs based upon an ongoing investigation without including any details beyond a single transaction over 3 months prior to the request for the search warrant" combined with the affiant officer's "hope as opposed to probable cause that he might find something that furthers the investigation(s) going on into the Mexican suppliers." (Filing No. 21 at p. 4).

"A supporting affidavit establishes probable cause to issue a search warrant if it 'sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched.'" *United States v. Lindsey*, 43 F.4th 843, 848 (8th Cir. 2022) (quoting *United States v. Brackett*, 846 F.3d 987, 992 (8th Cir. 2017); see also *United States v. Reed*, 921 F.3d 751, 757 (8th Cir. 2019) ("Probable cause exists when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'") (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "In addition to probable cause that contraband or evidence of a crime will be found, 'there must be evidence of a nexus between the contraband and the place to be searched.'" *United States v. Randle*, 39 F.4th 533, 536 (8th Cir. 2022) (quoting *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000)). "The requisite nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *United States v. Colbert*, 828 F.3d 718, 726 (8th Cir. 2016) (quoting *United States v. Etheridge*, 165 F.3d 655, 657 (8th Cir. 1999)). When relying on an affidavit to establish probable cause, "the probable cause determination must be based upon only that information which is found within the four corners of the affidavit." *United States v. Stults*, 575 F.3d 834, 843 (8th Cir. 2009). "Search warrant [a]pplications and affidavits should be read with common sense and not in a grudging,

hyper technical fashion." *United States v. Ryan*, 293 F.3d 1059, 1061 (8th Cir. 2002) (quotations and citations omitted). An issuing judge's determination of probable cause "should be paid great deference by reviewing courts." *United States v. Mutschelknaus*, 592 F.3d 826, 828 (8th Cir. 2010).

After review, the undersigned magistrate concludes Detective Rock's affidavit set forth sufficient facts to establish a fair probability that contraband or evidence of criminal activity, specifically, narcotics trafficking, would be found at the residence at 3630 R Street. The affidavit outlined the OPD's and DEA's various investigations into Mexico-based sources supplying large quantities of methamphetamine to the Omaha metro area. And, over the course of several months, various law enforcement officers found connections between Defendant, his residence, and the Mexico-based sources of supply being investigated. The affidavit set forth the information that, on July 21, 2022, law enforcement utilized a CI to arrange a controlled buy of two pounds of methamphetamine from a Mexico-based supplier, Guzman-Corona. Guzman-Corona contacted an Omaha-based courier known to law enforcement to deliver the methamphetamine. The July 2022 investigation resulted in law enforcement seizing over fifty pounds of methamphetamine.

One month later, on August 25, 2022, officers utilized the same CI to arrange a second controlled buy of one pound of methamphetamine from Guzman-Corona. Guzman-Corona again dispatched a courier—this time an individual the CI identified as Defendant—to deliver the methamphetamine to a predetermined location in Omaha. During this controlled buy, officers observed Defendant driving a goldish-brown Cadillac, in which the controlled buy with the CI took place. The CI completed the controlled buy and obtained one pound of a substance from Defendant that field-tested positive for methamphetamine. The reliability of the CI was established through the controlled buys with law enforcement. See, e.g., *United States v. Neal*, 528 F.3d 1069, 1073-74 (8th Cir. 2008) (finding reliability of informant was supported by a single controlled buy from defendant). The Cadillac was registered to Defendant at 3630 R Street. Defendant's driver's license also bore the 3630 R Street address. Immediately after the August 2022, controlled buy from Defendant, surveilling officers followed Defendant back to his residence at 3630 R Street, and watched him park and enter the residence. These facts support a reasonable inference Defendant was trafficking drugs and that evidence of such drug trafficking would be found at Defendant's residence. See, e.g., *United States v. Randle*, 39 F.4th 533, 537 (8th Cir. 2022) (concluding information in warrant affidavit that the defendant engaged in a controlled buy with a

reliable confidential informant and then was followed home by law enforcement "allows for a reasonable inference that [the defendant] was trafficking drugs and might be storing valuable contraband in his home.").

Defendant does not specifically argue the information in the warrant application was "stale," but does assert this single controlled buy of methamphetamine over three months prior to the request for the search warrant was insufficient to establish probable cause. If the August 2022 controlled buy was the only transaction identified in the search warrant application for the warrant issued in December 2022, Defendant may have a point. See, e.g., *United States v. Kennedy*, 427 F.3d 1136, 1142 (8th Cir. 2005) ("[I]information of an unknown and undetermined vintage relaying the location of mobile, easily concealed, readily consumable, and highly incriminating narcotics could quickly go stale in the absence of information indicating an ongoing and continuing narcotics operation."). But here, the search warrant application and affidavit contained information that Defendant was acting as a drug courier for, or was in contact with, three different Mexico-based sources of supply in an ongoing and continuing narcotics operation over the course of several months. See *United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998) ("[I]n investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information stale.").

In addition to the August 2022 controlled buy involving Defendant, Detective Rock received information from other units within the DEA conducting a different drug investigation that Defendant was also in contact with their source of supply within Mexico. The phone number provided by those officers to Detective Rock belonged to Defendant with a subscriber address of 3630 R Street. Detective Rock obtained a ping warrant to track Defendant's mobile device and learned Defendant worked for a car wash that had been involved in a prior DEA investigation due to the car wash owner distributing large quantities of cocaine and methamphetamine. Additionally, in November and December 2022, Detective Rock was contacted by other law enforcement officers investigating yet another source of supply target from Mexico. These officers believed Defendant was being utilized by their source of supply as a courier to transport and deliver pound quantities of methamphetamine within the Omaha metro area. Those officers determined their target was directing customers to meet at locations near the area of 3630 R Street due to the courier "not wanting to travel far with pound quantities of methamphetamine." Their target was also giving instructions to customers that a gold colored Cadillac would be conducting the narcotics

6

transactions. These facts support a reasonable inference that Defendant was engaged in continuing narcotics trafficking conduct beyond the August 2022 controlled buy, and that Defendant was using his gold colored Cadillac and residence at 3630 R Street in furtherance of this ongoing narcotics operation. See, e.g., *United States v. Tellez*, 217 F.3d 547, 549 (8th Cir. 2000) ("In this case there was evidence that [the defendant] was engaged in a continuing course of criminal activity, and we believe that it could fairly be inferred that he was keeping a supply of drugs and perhaps other evidence relating to his drug dealing in his home. Although, it is true that neither the informant nor the detective had actual knowledge that contraband was in [the defendant's] home, absolute certainty was not necessary: a fair probability is all that is required."); see also *United States v. Brackett*, 846 F.3d 987, 922 (8th Cir. 2017) (An issuing judge may "draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant.").

Issuing judges may also rely on warrant applications that include opinions based on officers' training and experience. See, e.g., *United States v. Turner*, 953 F.3d 1017, 1020 (8th Cir. 2020). Although perhaps inartfully drafted, the warrant application also noted that, in Detective Rock's training and experience combined with information from other arrests related to the investigation, Detective Rock believed the residence would contain drug records that identify other couriers and customers within Omaha, the amounts of narcotics being distributed and pricing, bank account information, cell phones containing text messages or phone numbers related to the Mexico sources of supply, other possible narcotics and money stash houses, or bank account information or wire transfers related to these drug trafficking organizations.

A search warrant affidavit is "judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Daigle*, 947 F.3d 1076, 1081 (8th Cir. 2020), *reh'g denied* (Mar. 10, 2020) (quoting *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000)). In this case, the undersigned magistrate judge finds the four corners of the warrant affidavit and application contained sufficient information establishing that there was a "fair probability that contraband or evidence of criminal activity" would be found in Defendant's the residence. See *United States v. Wallace*, 550 F.3d 729, 733 (8th Cir. 2008) ("[O]nly a probability of criminal conduct need be shown in the affidavit.").

Defendant further asserts that probable cause was so lacking that the *Leon* good faith exception does not apply. "In the absence of an allegation that the magistrate abandoned his

7

detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 920 (1984). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (quoting *Leon*, 468 U.S. at 922 (1984)). Under *Leon*, evidence seized in reliance on a search warrant is not subject to suppression unless:

> (1) the supporting affidavit or testimony includes a false statement made knowingly and intentionally or with reckless disregard for the truth to mislead the issuing judge; (2) the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Ortiz-Cervantes*, 868 F.3d 695, 702-03 (8th Cir. 2017) (citing *Leon*, 468 U.S. at 923). Only if the officer knew or should have known that the search was unconstitutional under the Fourth Amendment should the evidence be suppressed. See *United States v. Mayweather*, 993 F.3d 1035, 1041 (8th Cir. 2021), *reh'g denied* (May 19, 2021).

Defendant does not assert any of the above conditions apply in this case except for (3), that the warrant was "so lacking in indicia of probable cause" as to render belief in its existence entirely unreasonable. However, the undersigned magistrate judge finds that even if the warrant affidavit did not establish probable cause, the *Leon* good faith exception would apply. The affidavit contained information that Defendant was acting as a drug courier in Omaha for multiple Mexico-based sources of supply; law enforcement observed Defendant deliver one pound of methamphetamine during a controlled buy on August 25, 2022; during the controlled buy, Defendant drove a goldish-brown Cadillac registered at the residence; after the controlled buy, law enforcement followed Defendant driving his Cadillac to the residence; a second Mexico-based source of supply utilized a phone number belonging to Defendant and registered to the residence; in November and December 2022, a third drug trafficking investigation revealed that another Mexico-based source of supply utilized defendant as a drug courier; that the third source of supply directed drug customers to meet the courier near the residence so that the courier did not have to travel far with pounds of methamphetamine, and advised the courier would be driving a gold

8

colored Cadillac. Give all that information, it was not "entirely unreasonable" for law enforcement to rely on the warrant providing probable cause to search Defendant's residence for evidence related to an ongoing drug trafficking operation.

Upon consideration,

**IT IS HEREBY RECOMMENDED** to Robert F. Rossiter, Jr., Chief United States District Court Judge, that Defendant's Motion to Suppress Evidence and Statements and Request for Hearing ([Filing No. 20](#)) be denied.

Dated this 18th day May, 2023.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge

## ADMONITION

Pursuant to NECrimR [59.2](#), any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.